UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD F. MARTINEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>L. GAMBOA, et al.,<br><br>    Defendants. | Case No. 21-cv-02744-EMC<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART; RESOLVING MOTIONS; AND ESTABLISHING BRIEFING SCHEDULE**<br><br>Docket Nos. 69, 71, 73, 75, 78, 89 |

## I.  INTRODUCTION

Ronald F. Martinez, a prisoner at High Desert State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need by officials at Salinas Valley State Prison ("SVSP"). *See* Docket No. 1 ("Complaint"). The Court screened the Complaint and concluded that, while its allegations "[lay] close to the line of medical negligence," when the allegations were liberally construed Mr. Martinez had sufficiently alleged a deliberate indifference claim. *See* Docket No. 16 at 5-6. The Court ordered Defendants to respond to the Complaint. *See generally, id*.

Mr. Martinez subsequently sought, and was granted, leave to amend his allegations. *See* Docket Nos. 45, 51. Mr. Martinez's First Amended Complaint is now before the Court for screening. *See* Docket No. 70.

For the reasons stated below, the Court concludes that the FAC states a cognizable claim against Defendant Gamboa, who shall respond to the FAC. The FAC fails to state a claim as to all other Defendants, and they are dismissed.

## II. BACKGROUND

Mr. Martinez sues the following individuals: Dr. Gamboa, Mr. Martinez's primary care physician at SVSP; Dr. Hack, a physician at SVSP; Dr. Bright, the Chief Physician and Surgeon at SVSP; and Drs. Gordon and Hrobko, dermatologists who treated Mr. Martinez. *See* FAC at 2.

Mr. Martinez alleges the following in the FAC:

In June 2016, Mr. Martinez noticed a lesion on his left nostril. *See id*. at 4. He submitted health requests regarding this lesion. *See id*. at 5.

On January 9, 2017, Mr. Martinez met with Dr. Gordon, a dermatologist, via Telemed, a system that allows for remote video consultations. *See id*. at 5. Mr. Martinez informed Dr. Gordon that Mr. Martinez's family had a history of skin cancer. *See id*. Dr. Gordon diagnosed the lesion as a seborrheic keratosis, which he informed Mr. Martinez was a sort of rash. *See id*. at 6. Mr. Martinez challenged Dr. Gordon and asked how he could be sure of a diagnosis made through a video consultation. *See id*. at 7. Dr. Gordon adhered to his initial diagnosis. *See id*. Mr. Martinez asked for a second opinion and was told Dr. Gordon was the only available dermatologist at that time. *See id*.

On or around this same date, Mr. Martinez had a medical appointment with non-defendant Dr. Abraham. *See id*. at 8. Mr. Martinez informed Dr. Abraham that Mr. Martinez's family had a history of skin cancer. *See id*. In the FAC, Mr. Martinez represents that Dr. Abraham requested a biopsy for Mr. Martinez, and that this was approved by Dr. Gamboa. *See id*. However, the exhibits Mr. Martinez provided with the FAC, and to which he refers, *see id*., show that this was not so. Rather, Dr. Abraham "request[ed] a dermatology consult for biopsy/ treatment" of a lesion on Mr. Martinez's "left temple." FAC, Ex. A at 28.[1] Thus, Dr. Gamboa did not approve a biopsy, but rather a referral to a dermatologist for further evaluation. Mr. Martinez's exhibits show that Mr. Martinez received the consultation requested by Dr. Abraham and approved by Dr. Gamboa. *See id*. at 29.

On February 14, 2017, Mr. Martinez received cryotherapy from Dr. Gordon for the lesions

---

[1] The Court refers to the page numbers applied by the CM/ECF system because they are continuous to the page numbers of the FAC.

on his nose and on his left temple. *See* FAC at 9. Although Mr. Martinez raised the subject of a biopsy in that appointment, he confirmed to Dr. Gordon that he wished to receive cryotherapy. *See id*. Mr. Martinez represents that his nose lesion was non-responsive to, and did not heal well after, the cryotherapy. *See id*. at 10. However, the exhibits provided by Mr. Martinez show that the temple lesion entirely resolved after cryotherapy, and the nose lesion partially resolved. *See* FAC, Ex. A at 31.

On February 28, 2017, Mr. Martinez saw Dr. Gamboa for a follow-up appointment. *See* FAC at 11. Mr. Martinez pointed out to Dr. Gamboa that the nose lesion was not entirely resolved. *See id*. Dr. Gamboa explained that sometimes two cryotherapy sessions are necessary to be effective, and Mr. Martinez agreed that this was true. *See id*. Mr. Martinez "reminded" Dr. Gamboa that Mr. Martinez's family had a history of skin cancer. *Id*. Mr. Martinez requested a biopsy of the nose lesion. *See id*. at 12. Dr. Gamboa said that he would review Mr. Martinez's file to determine whether a biopsy was indicated and advised Mr. Martinez to cover his nose with zinc oxide before any sun exposure. *See id*.

On June 11, 2017, Mr. Martinez had a Telemed appointment with a new dermatologist, Dr. Hrobko. *See id*. at 13. Dr. Hrobko reached the same diagnosis as Dr. Gordon – that the lesion was a seborrheic keratosis – and advised that it be frozen off with liquid nitrogen. *See id*. at 14.

Between June 23 and June 30, 2017, Mr. Martinez received a second cryotherapy procedure, this time from Dr. Gamboa. *See id*. at 16. Dr. Gamboa told Mr. Martinez that if this second cryotherapy procedure did not work, then he would "review a different course of treatment, a biopsy." *Id*. at 17. Mr. Martinez represents that the second cryotherapy procedure did not resolve the lesion on his nose. *See id*. at 18. On July 23, 2017, Mr. Martinez submitted a request for a biopsy. *See id*.

On August 8, 2017, Mr. Martinez had an appointment with Dr. Hack. *See id*. Dr. Hack noted that Mr. Martinez's nose still bore a lesion of 3mm x 4mm, *see* FAC, Ex. A at 37, and ordered a biopsy, *see* FAC at 19.

Mr. Martinez alleges that Dr. Gamboa reviewed Dr. Hack's request and "intentionally and maliciously ignored, disregarded" the biopsy referral, and "instead substituted it" with a request

3

1   for a third cryotherapy procedure. *Id*. at 19. On August 18, 2017, Dr. Bright denied this request.
2   *See id*. at 20. Mr. Martinez argues that Dr. Bright should have ordered a biopsy rather than merely
3   dismissing the request for a third cryotherapy procedure. *See id*.

4   On or about August 30, 2017, during a medical appointment, Mr. Martinez asked Dr.
5   Gamboa the status of the biopsy requested by Dr. Hack. *See id*. Dr. Gamboa stated that the
6   request had been denied, and "conceal[ed]" from Mr. Martinez that Dr. Gamboa had "substituted .
7   . . his own" request for a third cryotherapy procedure in place of Dr. Hack's request for a biopsy.
8   *Id*. Dr. Gamboa led Mr. Martinez to believe that the request for a biopsy, rather than the request
9   for a third cryotherapy procedure, had been denied. *See id*.

10  Through the remaining months of 2017, and the first half of 2018, Mr. Martinez continued
11  to complain about the lesion in medical appointments, and to request a biopsy. *See id*. at 22. In
12  July 2018, Mr. Martinez was transferred to Corcoran State Prison. *See id*. at 20. Medical staff at
13  that prison arranged for Mr. Martinez to meet with a dermatologist, who immediately ordered a
14  biopsy of the lesion. *See id*. The biopsy showed that the legion was squamous cell carcinoma.
15  *See id*. The lesion has been removed. *See id*.

16  **III.    DISCUSSION**

17  A federal court must engage in a preliminary screening of any case in which a prisoner
18  seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28
19  U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims, and dismiss any
20  claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or
21  seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b).
22  *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d
23  696, 699 (9th Cir. 1990).

24  Although a complaint "does not need detailed factual allegations, . . . a plaintiff's
25  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
26  conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .
27  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*
28  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer

4

"enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The "'treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim on a condition of confinement, such as an excessive risk to health or safety, a prisoner-plaintiff must show: (1) an objectively, sufficiently serious, deprivation, and (2) that the official was, subjectively, deliberately indifferent to the inmate's health or safety. *See id.* at 834. The objective prong may be satisfied by the existence of a serious medical need if the failure to address that need "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). A defendant is deliberately indifferent if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.*

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment, because negligence does not rise to the level of deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's 8th Amendment rights), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain). Similarly, "[a] difference of opinion between

a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Mr. Martinez's expanded allegations in the FAC show that Drs. Gordon and Hrobko were not deliberately indifferent to Mr. Martinez's serious medical needs. The two dermatologists treated Mr. Martinez in separate appointments, and each diagnosed his lesions as seborrheic keratosis. *See* FAC at 7, 14. Contrary to Mr. Martinez's prior representations, the cryotherapy prescribed by these dermatologists was not entirely ineffective. Mr. Martinez concedes in his FAC that the cryotherapy resolved the lesion on his left temple, and the medical records he provides show that the cryotherapy partially resolved the lesion on his left nostril. *See* FAC, Ex. A at 31. And as explained above, both dermatologists treated Mr. Martinez before any doctor had ordered a biopsy; contrary to Mr. Martinez's suggestions in the FAC, neither dermatologist overrode a medical order that Mr. Martinez be given a biopsy. That two doctors independently reached the same diagnosis and prescribed a treatment that worked in part does not suggest any deliberate indifference on the part of either. Accordingly, Mr. Martinez's claim is **DISMISSED** as to Drs. Gordon and Hrobko.

Mr. Martinez's claim fails as to Dr. Hack because, even under Mr. Martinez's allegations, Dr. Hack provided exactly what Mr. Martinez wanted: a referral to receive a biopsy. *See* FAC at 18-20. According to the FAC, the biopsy never occurred because Dr. Gamboa "substituted" his request for Dr. Hack's, and then "conceal[ed]" that substitution. *See id*. at 19-21. This is an allegation against *Dr. Gamboa* and does not reveal any wrongdoing or even negligence on the part of Dr. Hack. Accordingly, Mr. Martinez's claim is **DISMISSED** as to Dr. Hack.

Similarly, Mr. Martinez's claim fails as to Dr. Bright because there are no facts to suggest Dr. Bright ever saw a request that Mr. Martinez be given a biopsy. *See id*. at 18-20. Mr. Martinez's allegation that Dr. Gamboa substituted a third cryotherapy request in place of Dr. Hack's biopsy request in fact suggests the opposite: that Dr. Bright did not see Dr. Hack's request for a biopsy. Thus, Dr. Bright's only involvement in this saga was to deny Dr. Gamboa's request that Mr. Martinez be treated with cryotherapy for a third time. *See id*. This is a treatment which Mr. Martinez repeatedly argues was unnecessary and which he did not want. *See generally, id*.

6

Like Dr. Hack, Dr. Bright did not wrong Mr. Martinez. Accordingly, Mr. Martinez's claim is **DISMISSED** as to Dr. Bright.

Mr. Martinez has stated a claim against Dr. Gamboa for deliberate indifference to a serious medical need. He alleges that Dr. Gamboa knew the lesion on Mr. Martinez's nose had not entirely resolved with cryotherapy, and that Dr. Gamboa knew of Mr. Martinez's family history of skin cancer. More significantly, Mr. Martinez alleges that Dr. Gamboa promised to consider a biopsy if the second cryotherapy procedure did not work; somehow substituted a request for a third cryotherapy session in place of Dr. Hack's request for a biopsy; and concealed from his patient that Dr. Hack's biopsy request had not been reviewed by Dr. Bright. *See id*. at 17-20. Mr. Martinez alleges that because of Dr. Gamboa's actions, his skin cancer went untreated for three years. *See id*. at 20-22. If believed, these allegations suggest that Dr. Gamboa was deliberately indifferent to Mr. Martinez's serious medical need for a biopsy.

### IV. MOTIONS

Defense counsel moved for a *nunc pro tunc* extension of time to serve a discovery response upon Mr. Martinez. *See* Docket No. 69. This motion is **GRANTED**.

Mr. Martinez moved for an extension of time to file his FAC, Docket No. 64, and then moved to withdraw his extension request, Docket No. 71. A second extension motion was received by the Court after Mr. Martinez already had filed his FAC. Docket No. 73. The first extension motion shall be terminated, Docket No. 64; the withdrawal motion is **GRANTED**, Docket No. 71; and the second extension motion is **DENIED AS MOOT**, Docket No. 73.

Both parties ask for the FAC to be screened. Docket Nos. 75, 89. The motions are **GRANTED**. This order screens the FAC.

Mr. Martinez asks the Court to order Corcoran State Prison ("CSP") to return certain property which was confiscated while Mr. Martinez was held in administrative segregation at CSP following a rules violation. *See* Docket No. 78. This Court has no jurisdiction to do so, and in any event, Mr. Martinez has been transferred to High Desert State Prison ("HDSP"). *See* Docket No. 88 (noting change of address). If Mr. Martinez believes he wrongfully has been deprived of property, he may file a civil rights action in the appropriate court seeking its return. Both CSP and

7

HDSP lie within the Eastern District of California.  *See* 28 U.S.C. 84(b).

## V. CONCLUSION

Defendant Gamboa already has been served in this action.  *See* Docket No. 20.

1. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **June 2, 2023**, Defendant Gamboa must file and serve a motion for summary judgment or other dispositive motion.  If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendant must so inform the Court prior to the date the motion is due.  If Defendant files a motion for summary judgment, Defendant must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time he files such a motion.  *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendant no later than **June 30, 2023**.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. Defendant **shall** file a reply brief no later than **July 14, 2023**.

2. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . .  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is

8

granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

3. All communications by Plaintiff with the Court must be served on defense counsel by mailing a true copy of the document to defense counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent.

4. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.**

5. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

6. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

This order disposes of Docket Nos. 69, 71, 73, 75, 78, and 89.

**IT IS SO ORDERED**.

Dated: March 9, 2023

_____
EDWARD M. CHEN
United States District Judge

9